No. 25-3686

# In the United States Court of Appeals
## FOR THE NINTH CIRCUIT

————

CHINO VALLEY UNIFIED SCHOOL DISTRICT,
*a local educational agency, et al.*,

*Plaintiffs–Appellants,*

v.

GAVIN NEWSOM, *in his official capacity as
Governor of the State of California, et al.,*

*Defendants–Appellees.*

On Appeal from the United States District Court for the
Eastern District of California
No. 2:24-cv-01941-DJC-JDP
Hon. Judge Daniel J. Calabretta

————

## APPELLANTS' REPLY BRIEF

————

Emily Rae (308010)
CALIFORNIA JUSTICE CENTER
18002 Irvine Blvd., Ste. 108
Tustin, CA 92780
(949) 237-2573
emily@calpolicycenter.org

Kathryn Cosgrove (312079)
LIBERTY JUSTICE CENTER
7500 Rialto Blvd., Ste. 1-250
Austin, TX 78735
(512) 481-4400
kcosgrove@libertyjusticecenter.org

*Attorneys for Plaintiffs–Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... ii

INTRODUCTION ......................................................................... 1

ARGUMENT ................................................................................ 3

   I.   Plaintiffs have standing to challenge AB 1955 ...................... 3

      A.   Parent Plaintiffs properly alleged standing ................. 3

      B.   LEA Plaintiffs properly alleged standing
          and this Court should reexamine *South
          Lake Tahoe* as inconsistent with Supreme
          Court precedent ............................................................ 13

  II.   Governor Newsom is not entitled to Eleventh
       Amendment immunity ...................................................... 15

 III.   The district court improperly ruled on the merits
       of Plaintiffs' FERPA claim ...................................... 15

CONCLUSION .................................................................... 17

CERTIFICATE OF COMPLIANCE ............................................. 18

CERTIFICATE OF SERVICE........................................... 19

i

# TABLE OF AUTHORITIES

## Cases

*Board of Educ. v. Allen,*
    392 U.S. 236 (1968) ...............................................................13

*Branson Sch. Dist. RE-82 v. Romer,*
    161 F.3d 619 (10th Cir. 1998) ...............................................14

*Catholic League for Religious & Civil Rights v. City & Cnty. of S.F.,*
    624 F.3d 1043 (9th Cir. 2010) .......................................16, 17

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) .................................................................5

*Colo. River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976) .................................................................4

*Deanda v. Becerra,*
    96 F.4th 750 (5th Cir. 2024)....................................................8

*Doe v. Horne,*
    115 F.4th 1083 (9th Cir. 2024)................................................7

*Ex parte Young,*
    209 U.S. 123 (1908) ...............................................................15

*Hart v. Massanari,*
    266 F.3d 1155 (9th Cir. 2001) ...............................................14

*Int'l Partners for Ethical Care Inc. v. Ferguson,*
    146 F.4th 841 (9th Cir. 2025)..................................................9

*Int'l Partners for Ethical Care Inc. v. Ferguson,*
    2025 U.S. App. LEXIS 31728 (9th Cir. 2025) .................10, 11

*L.A. Cnty. Bar Ass'n v. Eu*,
  979 F.2d 697 (9th Cir.1992) ...................................................15

*Mirabelli v. Olson*,
  2025 U.S. Dist. LEXIS 264381 (S.D. Cal. Dec. 22, 2025) ...2, 7

*Ocean Cty. Bd. Of Comm'rs v. AG of N.J.*,
  8 F.4th 176 (3d Cir. 2021) .....................................................14

*Parents Protecting Our Children, UA v. Eau Claire School District, Wisconsin, et al.*,
  145 S. Ct. 14 (2024) .......................................................3, 4, 5

*Parham v. J.R.*,
  442 U.S. 584 (1979) .......................................................1, 4, 7

*Prince v. Massachusetts*,
  321 U.S. 158 (1944) .................................................................4

*Rogers v. Brockette*,
  588 F.2d 1057 (5th Cir. 1979) ...............................................14

*Santosky v. Kramer*,
  455 U.S. 745 (1982) ...............................................................12

*South Lake Tahoe v. Cal. Tahoe Reg'l Planning Agency*,
  449 U.S. 1039 (1980) .............................................................14

*South Lake Tahoe v. Cal. Tahoe Reg'l Planning Agency*,
  625 F.2d 233 (9th Cir. 1980) .................................................13

*Troxel v. Granville,*
    530 U.S. 57 (2000) .................................................................5

*Tweed-New Haven Airport Auth. v. Tong,*
    930 F.3d 65 (2nd Cir. 2019) ................................................14

**Rules**

Fed. R. Civ. P. 12 ..................................................................16

**Statutes**

20 U.S.C. § 1232g...................................................................16

Cal. Ed. Code § 220.3..............................................................1

Cal. Ed. Code § 220.5..............................................................1

**Constitutional Authority**

U.S. Const. art. III, § 2 ......................................................3, 4

U.S. Const. amend. XIV, § 1....................................................5

## INTRODUCTION

Defendants fundamentally misstate the nature of Plaintiffs' challenge to Assembly Bill 1955 ("AB 1955"), framing their own extreme interpretation as reasonable. *See* Cal. Ed. Code §§ 220.3, 220.5.[1] But the government's position is far from rational or cautious. AB 1955 allows school officials to make life-altering decisions about a child's gender identity while intentionally keeping parents uninformed. School officials lack both the specialized expertise in adolescent mental health and the "natural bonds of affection [that] lead parents to act in the best interest of their children." *Parham v. J.R.*, 442 U.S. 584, 602 (1979) ("The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions."). Defendants "have no personal investment in a student's health" and "will not be exposed to a lifetime of a student's mental health issues. Instead, that will be the parents' grief

---

[1] "AB 1955 does nothing to prevent a school district from adopting a policy forbidding disclosure or allowing disclosure based on a student's individual circumstances." Appellee Br. at 11. "AB 1955 does not restrict or otherwise regulate permissive school policies that allow for disclosure in certain circumstances, such as when a student's health or safety is at risk." *Id.* at 1.

1

to bear alone." *Mirabelli v. Olson*, No. 3:23-cv-768-BEN-WVG, 2025 U.S. Dist. LEXIS 264381, at *8 (S.D. Cal. Dec. 22, 2025).

AB 1955 strips public-school parents of their fundamental rights, regardless of whether the policy is permissive, as Defendants claim. The law creates an arbitrary inconsistency: one teacher might disclose a high school student's social transition to his parents based on a subjective "health and safety" assessment, while another could conceal the social transition of that same parent's four-year-old. By codifying a presumption of secrecy, AB 1955 subjects parental rights to the whims of individual educators in violation of the Constitution.

While this Court's analysis is currently limited to the issue of standing, this question cannot be considered in a vacuum. The rights at stake are fundamental and the implications serious. The government's narrow and limited interpretation of standing would lead to illogical, absurd results. It would also violate the Constitution, the clear text of the Family Educational Rights and Privacy Act ("FERPA"), and this Court's precedent on Article III standing.

The district court's judgment must be reversed because it ignored Parent Plaintiffs' primary grounds for standing, applied a standing

2

requirement contrary to Supreme Court precedent in the case of LEA Plaintiffs, incorrectly held that Governor Newsom is entitled to Eleventh Amendment immunity, and improperly issued a merits-based ruling on Plaintiffs' FERPA claim.

## ARGUMENT

### I. Plaintiffs have standing to challenge AB 1955.

Plaintiffs have standing for each of their claims. AB 1955 directly violates their First and Fourteenth Amendment rights to direct the upbringing of their children and to raise their children in accordance with their sincerely held religious beliefs. LEA Plaintiffs have standing because Supreme Court precedent is at odds with, and therefore takes precedence over, this Court's decision in *South Lake Tahoe*.

### A. Parent Plaintiffs properly alleged standing.

Some federal courts, including the district court here, have "succumb[ed] to the temptation to use the doctrine of Article III standing as a way of avoiding some particularly contentious constitutional questions." *Parents Protecting Our Children, UA v. Eau Claire Sch. Dist., Wis.*, 145 S. Ct. 14, 14–15 (2024), (Alito, J., dissenting from denial of cert.); *see also* U.S. Const. art. III, § 2 (articulating the constitutional

standing requirements for federal courts). "While it is important that federal courts heed the limits of their constitutional authority, it is equally important that they carry out their 'virtually unflagging obligation . . . to exercise the jurisdiction given them." *Parents Protecting Our Children*, 145 S. Ct. at 15 (Alito, J., dissenting from denial of cert.) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

AB 1955's breach of parental rights is neither speculative nor imagined. The Supreme Court has long held "that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944). This right originates from the "natural bonds of affection [that] lead parents to act in the best interests of their children." *Parham*, 442 U.S. at 602.

California's intentional interference—whether direct or indirect— with the parent-child relationship forms an injury to the fundamental right of parents to direct the upbringing of their children. As one Supreme Court Justice explained, the burden of litigating a domestic

4

relations proceeding can itself be "so disruptive of the parent-child relationship that the constitutional right of a custodial parent to make certain basic determinations for the child's welfare becomes implicated." *Troxel v. Granville*, 530 U.S. 57, 101 (2000) (Kennedy, J., dissenting); *see also* U.S. Const. amend. XIV, § 1.

Relying on the framework set forth in *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), the district court found that Parent Plaintiffs lack standing. But, unlike *Clapper*, this case does not involve a "highly attenuated" or "speculative chain of possibilities." 568 U.S. at 410, 414. The harm—schools being permitted to keep parents in the dark about a child's gender transition—is real and ongoing. As Justice Alito recently said, when a "challenged policy . . . specifically encourage[s] school personnel to keep parents in the dark about the 'identities' of their children," then "the parents' fear that the school district might make decisions for their children without their knowledge and consent is not 'speculative.' They are merely taking the school district at its word." *Parents Protecting Our Children*, 145 S. Ct. at 14 (Alito, J., dissenting from denial of cert.) (internal citation omitted).

5

It defies logic that the only parents who have standing are those who can assert that their child is *currently* transitioning and can assert that their school districts are *currently* lying to them. A parent who waits for a secret transition to be exposed would struggle to obtain injunctive relief, as the school's concealment becomes moot once the parents discover the truth. Under the district court's standing analysis, parents are left without recourse: they cannot challenge the withholding of information while they are unaware of it, and they cannot seek relief once the concealment ends and the damage is done.

Secrecy policies—allowed for and encouraged by AB 1955—supply the injury-in-fact by their very nature. Parents of public-school children— ages 4 to 17—do not know whether their schools are withholding constitutionally protected information about their children's health and wellbeing. When a school district adopts a policy that overrides parental authority on a major health decision and requires staff to conceal it, parents are immediately harmed by losing control over that critical choice. If parents subject to such policies lack standing to challenge them, federal standing doctrine has truly gone off the rails.

The injury-in-fact is the secrecy itself. AB 1955 tramples parents' right to know and be informed about their children's health and well-being—a point both the district court and the government overlook. Parent Plaintiffs' injury is not mere policy disagreement, as Defendants assert, Appellee Br. at 2, but the deprivation of constitutionally protected information.

This Court has acknowledged that social transition for gender dysphoria amounts to a form of medical treatment. *Doe v. Horne*, 115 F.4th 1083, 1107, n.13 (9th Cir. 2024). Parents have a "'high duty' to recognize symptoms of illness and to seek and follow medical advice," *Parham*, 442 U.S. at 602—a duty AB 1955 undermines by keeping them in the dark.

"[T]he secrecy aspect of the [law] . . . deprives parents of the opportunity to evaluate a significant medical sign and decide whether to pursue psychological counseling, psychiatric care, gender-affirming care, family acceptance, or something else." *Mirabelli*, 2025 U.S. Dist. LEXIS 264381, at *36. "The question is whether being involved in potentially serious medical or psychological decision-making for their school student is a parent's constitutional right. It is." *Id.* at *38. The government would

7

have to disavow that parents have the right to information about their children's medical decisions to overcome Parent Plaintiffs' argument—which they have not done and cannot do.

In fact, if a Parent Plaintiff did learn that their child was socially transitioning under the guidance of their school and without parental notice, it would mean that the parent "had been injured not once, but *twice*—once by . . . nullifying his parental rights" and a second time by the secret social transition of the child. *See Deanda v. Becerra*, 96 F.4th 750, 759 (5th Cir. 2024) (father had standing to challenge a state contraceptive program for minors without parental consent, despite no allegation that his children had or would obtain such services in the near future).

In litigation challenging a policy requiring schools to provide contraceptives to teens without parental permission, the Fifth Circuit held that it was a "puzzling argument" to assert that the plaintiff had to prove that his child had or would receive contraceptives to prove standing to sue. *Id.* As the court explained, "[p]arents' standing to sue should not depend on whether [a government official] has successfully kept them in the dark about their children's sex lives." *Id.* The same logic applies here:

8

Parent Plaintiffs' standing should not depend on whether their public school has successfully concealed their children's mental health and gender identity decisions.

This Court's decision in *International Partners for Ethical Care Inc. v. Ferguson*, 146 F.4th 841 (9th Cir. 2025), cited by Defendants, Appellee Br. at 17–18, is distinguishable. In that case, this Court addressed a challenge to a Washington state law that enabled shelters housing runaway minors and minor-focused outpatient treatment facilities to provide "gender-affirming treatment" without parental notification. *Int'l Partners*, 146 F.4th at 844–45. The parents' claim was dismissed on standing grounds because their children were not runaways, and thus the harm was considered speculative. *Id.* at 851–52.

Here, in contrast, no one disputes that Parent Plaintiffs' children currently attend schools in districts, such as Chino Valley Unified School District and Anderson Union High School District[2], that are unable to

---

[2] Defendants assert that CVUSD and AUHSD "abandoned" the argument that their policies fall outside the scope of AB 1955 as a matter of law. Appellee Br. at 9, n.3. This is false. CVUSD and AUHSD have consistently argued their alternative argument that policies not mentioning gender are not subject to AB 1955, maintain the validity of their alternative declaratory judgment claim, and have not waived any arguments in support of that claim.

adopt policies ensuring parents will not be lied to directly because of AB 1955. The fact that AB 1955 ensures districts may keep secrets from and lie to parents gives rise to Parent Plaintiffs' standing in this case. Unlike *International Partners*[3]—where the harm was speculative because children might run away in the future—this case involves concrete, ongoing harm: school districts are currently authorized to conceal information from parents about their children.

Parent Plaintiffs should not be forced to wait until they discover that the public school system is secretly socially transitioning their children to assert standing. At that point "it may be too late to rehabilitate . . . the damage done to their child." *See Int'l Partners for Ethical Care Inc. v. Ferguson,* No. 24-3661, 2025 U.S. App. LEXIS 31728, at *29 (9th Cir. Dec.

---

[3] This Court denied a petition for panel rehearing and a petition for rehearing en banc in *International Partners* and affirmed the district court's dismissal for lack of standing. *Int'l Partners for Ethical Care Inc. v. Ferguson*, No. 24-3661, 2025 U.S. App. LEXIS 31728 (9th Cir. Dec. 5, 2025). But, in so doing, the dissenting judges articulated why standing requirements were never intended to create a catch-22 situation. "The parents should not have to wait until their child has run away to a shelter and received life-altering treatment before they are afforded the opportunity to challenge the law—a law whose very object is to prevent the parents from knowing, in the first place, of their child's arrival at the shelter and his or her receipt of 'gender-affirming' treatment." *Id.* at *29 (Tung, J., dissenting from denial of rehearing en banc).

5, 2025) (Tung, J., dissenting from denial of rehearing en banc). AB 1955 "perversely encourages states to be clandestine when intentionally interfering" with "the well-established right of parents to direct the care and upbringing of their children." *See id.* at \*10 (VanDyke, J., dissenting from denial of rehearing en banc). The district court's standing decision will encourage states to keep the government's influence over children's medical and mental health issues secret from parents to avoid challenges to their infringement on parental constitutional rights.

The district court held, and Defendants argue, that Parent Plaintiffs must allege that their children are "transgender or gender non-conforming" to establish standing. Appellee Br. at 15; *see also* ER-08–09. But this argument appears to assume that the "harm" to the parent is the transitioning of their child, which is not what Plaintiffs allege here. Rather, the harm is the ability to keep a secret from the parent. Alternatively, Defendants' argument assumes that keeping a child's transition a secret from their parents is only a harm if the parent opposes the transition. But AB 1955 harms even those parents who support their child's transition because, under the law, school districts are still required to have policies that enable them to keep secrets from parents

regardless of how parents receive information related to their child's transition. This is because parents are responsible for the care, custody, and control of their own children, *Santosky v. Kramer*, 455 U.S. 745, 753 (1982), and secrecy deprives them of exercising that right.

Plaintiffs need not show that their "children would be more likely to inform the school, rather than them, of a decision to transition—or that school officials would respect a child's desire not to inform the parents." Appellee Br. at 16. Indeed, requiring such a showing would be a nearly impossible feat. How are parents to know who their child is most likely to inform if they experience feelings of gender incongruence? And how is a parent to allege the intentions of each and every school employee their child may encounter and confide in?

The logical conclusion to Defendants' argument is that, in order for a parent to have standing, they must read not only their own child's mind, but also the minds of every school official who may be involved in their child's future secret transition. Under that standard, standing would become a shield by which government could insulate itself from almost any challenge to allegedly unconstitutional laws or regulations. Such a standard is contrary to Supreme Court precedent and the precedent of

this Court and would relieve federal courts of their obligation to exercise the jurisdiction provided to them by the Constitution.

The district court improperly allowed merits considerations to drive the standing analysis. If the law at issue prohibited policies that inform parents if a child is suicidal, receives detention, or is failing a class, parents would clearly have standing to challenge such a law. This case is no different.

It is the policy itself—which allows for and encourages secrecy—and the fact that parents could, at any time, be kept in the dark regarding important health-related information concerning their children—that harms Plaintiffs and therefore confers standing. The district court erred holding otherwise.

### B. LEA Plaintiffs properly alleged standing and this Court should reexamine *South Lake Tahoe* as inconsistent with Supreme Court precedent.

Although *City of South Lake Tahoe v. California Tahoe Regional Planning Agency*, 625 F.2d 231 (9th Cir. 1980) is binding on this panel, it should be revisited. This Court's holding in *South Lake Tahoe* expressly departed from Supreme Court precedent in *Board of Education v. Allen*, 392 U.S. 236 (1968). Other circuit courts have properly upheld *Allen* in

13

affirming the right of political subdivisions to sue the creator state under the Supremacy Clause, as LEA Plaintiffs assert here. *See Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 628 (10th Cir. 1998); *Rogers v. Brockette*, 588 F.2d 1057, 1061 (5th Cir. 1979); *Ocean Cty. Bd. of Comm'rs v. AG of N.J.*, 8 F.4th 176, 181 (3d Cir. 2021); *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 73 (2d Cir. 2019). At least one Supreme Court Justice has already admonished the *South Lake Tahoe* court for violating Supreme Court precedent. *South Lake Tahoe v. Cal. Tahoe Reg'l Planning Agency*, 449 U.S. 1039, 1039 (1980) (White, J., dissenting from denial of cert.) (criticizing this Court for claiming the Supreme Court had "*sub silentio* overruled" its precedent endorsing political subdivision standing and stating that this Court's *per se* rule that a political subdivision of a State may not raise constitutional objections to the validity of a statute was inconsistent with *Allen*).

Although Defendants assert that this request should be "directed to the full court in an en banc petition, not this three-judge panel," Appellee Br. at 29, Appellants have followed proper procedure here to set up this case for en banc review. *See Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001).

## II. Governor Newsom is not entitled to Eleventh Amendment immunity.

Defendants do not dispute that Governor Newsom publicly stated his ability to impose fines or restrict funding on school districts that failed to implement policies which he supported. *See* ER-32–33, 36. He is not a passive observer. Defendant Thurmond stated that he was "glad to *join* in this action with Governor Newsom [] and thank him for his *leadership* in calling for Temecula's school board to reverse course . . . ."[4] The Governor has made clear that he has a "fairly direct" "connection with the enforcement of the act." *Ex parte Young*, 209 U.S. 123, 157 (1908); *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992). Governor Newsom, therefore, is not entitled to Eleventh Amendment immunity.

## III. The district court improperly ruled on the merits of Plaintiffs' FERPA claim.

Defendants mischaracterize the district court's order by dismissing the FERPA discussion as "a brief discussion of the merits of plaintiffs' FERPA claims" while claiming the ruling was on standing. Appellee Br. at 33. In fact, the court issued a substantive ruling on FERPA's merits.

---

[4] Press Release, Office of Governor Gavin Newsom, Governor Newsom and State Leaders: If Temecula School Board Won't Do Its Job, State Will (July 13, 2023), https://www.gov.ca.gov/2023/07/13/temecula-do-your-job/ (emphasis added).

Although styled as a Rule 12(b)(1) dismissal, the district court's FERPA analysis never mentions standing. ER-17–18; *see also* 20 U.S.C. § 1232g (FERPA). Instead, its six-part justification for dismissing the FERPA claim rests entirely on the merits—specifically, the court's determination that AB 1955 contained a "carveout for any conflict with federal law." ER-17.

Merits determinations belong on summary judgment or Rule 12(b)(6) motions, not Rule 12(b)(1) dismissals. Rule 12(b)(1) does not authorize the district court to decide difficult questions of conflicting state and federal law unrelated to jurisdiction. Therefore, even if the other claims could be dismissed on standing grounds—which they cannot—the district court's FERPA ruling should be reversed because it improperly decided the merits under a jurisdictional matter.

"Standing is emphatically not a doctrine for shutting the courthouse door to those whose causes courts do not like. Nor can standing analysis, which prevents a claim from being adjudicated for lack of jurisdiction, be used to disguise merits analysis, which determines whether a claim is one for which relief can be granted if factually true." *Catholic League for*

16

*Religious & Civil Rights v. City & Cnty. of S.F.*, 624 F.3d 1043, 1049 (9th Cir. 2010) (en banc).

## CONCLUSION

For the foregoing reasons, Appellants respectfully request that this Court reverse the lower court's Rule 12(b)(1) dismissal.

Dated: January 23, 2026

Respectfully Submitted,

CALIFORNIA JUSTICE CENTER

By: *Emily Rae*

Emily Rae

LIBERTY JUSTICE CENTER

*Kathryn Cosgrove*

Kathryn Cosgrove

*Attorneys for Plaintiffs–Appellants*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the word limit of Cir. R. 32-1 because this brief contains 3,318 words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

Dated: January 23, 2026        CALIFORNIA JUSTICE CENTER

By: *Emily Rae*
_____

Emily Rae

*Attorneys for Plaintiffs–Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2026, I electronically filed the foregoing Appellants' Reply Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF System. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: January 23, 2026        CALIFORNIA JUSTICE CENTER

By: _Emily Rae_____

        Emily Rae

        *Attorneys for Plaintiffs–Appellants*